101 So.2d 823 (1958)
Ralph SUTTON, Appellant,
v.
Fred E. CRANE et al., Appellees.
No. 57.
District Court of Appeal of Florida. Second District.
March 26, 1958.
Rehearing Denied April 21, 1958.
*824 Leonard Lubin and William Kaleel, St. Petersburg, for appellant.
William Robertson, of Robertson & Robertson, Sarasota, for appellee, Hallie Moore.
William Stockham, of Stockham, Robinson & Harrison, Sarasota, for appellees, Fred E. Crane and Milton Thomas.
SHANNON, Judge.
The appellant filed an amended bill of complaint against the appellees seeking rescission of a contract to purchase real property. The lower court entered an order of dismissal with prejudice and this appeal challenges the correctness of the trial court's order.
The plaintiff, as vendee, entered into a contract with the defendants dated July 24, 1956, wherein certain real estate was set out in gross.
He alleges in his amended complaint that prior to his executing the contract, he was flown over this property by Jeannette Taylor and Fred E. Crane, both of whom were real estate brokers. He also alleges that it was represented to him that he was purchasing some 7,000 acres contiguous to waterfront property on the Gulf of Mexico, and that the contiguous waterfront property was owned by the same owner as the property he was purchasing, and that it could be purchased upon the same terms, price and conditions as the other real estate. Thereafter, he tendered his check for $50,000, payable to Jeannette Taylor. He also alleges that Jeannette Taylor read him the contract in New York City, due to the fact that plaintiff suffered from diseased eyes and extremely poor vision and was unable to read printed matter; he alleges that she verbally entered in the contract, as read, the right of the buyer to purchase the waterfront property upon the same price and terms as the other property. He, also, alleged, in connection with the $50,000 check, that she promised to hold this check until he had an opportunity to determine whether or not he could obtain financial backing for the transaction, but instead indorsed it over to Crane, who immediately attempted to cash it. The check was returned by the bank marked "Insufficient Funds" and, he alleges that he then discovered that the contract that he had been induced to sign was not as represented.
In view of the circumstances as we have outlined them above, the plaintiff then signed an amended contract on the 28th day of August, 1956, which contained in part as follows:
"The contract executed by the parties hereto on July 24, 1956, appended hereto, is ratified and confirmed subject to the following amendments: * * *"
The amendments have to do with the mortgage. Nothing is said as to the Gulf front property or the number of acres involved in the transaction. Then, as he alleges, he entered into a contract with Crane on the 11th day of September, 1956, having to do with the contract referred to. The plaintiff says that the amended complaint alleges fraud and misrepresentation while the defendants say that the facts as alleged do not, but, if they do, the plaintiff's action in signing the amended contract with full knowledge of the frauds and misrepresentations practiced on him before that time, did not justify him in rescinding.
*825 In contrasting the amended complaint with the original complaint filed herein, there is a temptation to hold that a man entering into a contract involving the purchase of substantial acreage would have, as his eyesight was so diseased that he could not read, a person who was not interested in the transaction read it to him; but aside from these misrepresentations which, he alleges, were made as to the original contract, those as to the amended contract lead us to determine how far the actual cases go. In 12 Am.Jur., Contracts, Section 137, gives the correct rule:
"* * * The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."
One of the best studied cases was an opinion by Justice Davis in the case of Columbus Hotel Corporation v. Hotel Management Co., 1934, 116 Fla. 464, 156 So. 893, on page 901, in speaking as to the right of the person to believe what is told him in view of the fact that he had discovered fraud prior to the time that he signed the amended contract, the court says:
"Misrepresentation amounting to fraud that will invalidate a contract must be made by one contracting party to another in reference to a matter affecting the contract. The person to whom it is made must not only believe the false representation to be true, but must be so situated with respect to what is represented that he, at the time, has the right to rely upon the truth of the representation as made. This is so, because the false representation must be material to the contract and must have induced the contract to be made. When dehors the contract, a false representation cannot be said to have induced its making, when it was so made as to carry on its face no right on the part of any one to rely on its credence. Zavala Land & Water Company v. Tolbert, Tex.Civ.App., 165 S.W. 28."
And, assuming, as he alleges, that he knew of the fraud of the defendant at the time he signed the amended contract, Justice Davis goes on to point out:
"And, where parties are given to understand that they are dealing at arm's length in the compromise of an already existing controversy that itself comprehends charges of legal fraud, misconduct, and dishonest suppression of material facts, as was the situation with the parties now before this court in the instant proceeding, there arises no duty on the part of one of the antagonists to reveal his own peculiar situation to his adversary, on pain of being held liable for fraudulent concealment of facts if he does not do so. 1 Story's Equity Jurisprudence (14th Ed.) p. 296; 12 R.C.L. 296, 307-309; Cleaveland v. Smith, 132 U.S. 318, 10 S.Ct. 100, 33 L.Ed. 384; Reznor v. Maclary, 4 Houst. (Del.) 241, 259; Taylor v. Bradshaw, 6 T.B.Mon. (Ky.) 145, 17 Am.Dec. 132; Cobb v. Morrison, 79 N.H. 74, 104 A. 829; Ward v. Town of Southfield, 102 N.Y. 287, 6 N.E. 660."
This same principle was laid down in Fuller v. Fuller, Fla. 1953, 68 So.2d 177, 178. In that case following Columbus Hotel Corporation v. Hotel Management Co., supra, the court stated:
"In the divorce proceedings the husband and wife were dealing `at arm's length'. In that very proceeding she *826 charged him with fraud. She was represented by an attorney of her own choosing. No confidential relationship existed between them and in such a proceeding she had no right to rely upon her husband to disclose anything to her with reference to his property or business transactions. Columbus Hotel Corporation v. Hotel Management Co., 116 Fla. 464, 156 So. 893."
Again, in George E. Sebring Co. v. Skinner, 1930, 100 Fla. 315, 129 So. 759, 761, the principle was laid down as follows:
"While it is true that one cannot by a false representation induce carelessness upon another's part in the matter of signing papers and then profit by such negligence, the policy of the law is that he who will not reasonably guard his own interest when he has reasonable opportunity to do so, and there is no circumstance reasonably calculated to deter him from improving such opportunity, must take the consequences. Where there is such inattention amounting to gross carelessness on the one side and misstatement upon the other and but for the former the latter would not be effective and loss occurs to the inexcusably negligent one, he is remediless. `Not because the wrong doer can plead his own wrongdoing as an excuse for not making reparation, but, first, because the consequences are attributable to inexcusable inattention of the injured party; and second, because the court will not protect those who, with full opportunity to do so, will not protect themselves.' See Standard Mfg. Co. v. Slot, 121 Wis. 14, 98 N.W. 923, 927, 105 Am.St.Rep. 1016; Parker v. Parrish, 18 Ga. App. 258, 89 S.E. 381."
In Johnson v. Green, Fla. 1951, 54 So.2d 44, 46, in a case where the court in speaking of mistake, although generally, fraud was involved, had this to say:
"* * * On the question of mistake, we point out that the authorities generally hold that equity will not grant relief where the mistake complained of resulted from the want of care or that degree of care and diligence which could be exercised by persons of reasonable prudence under the same circumstances. * * *"
In the case of Fote v. Reitano, Fla. 1950, 46 So.2d 891, 892, on the proposition that the purchaser must use reasonable diligence for his own protection, the court said:
"In the second place, since reliance upon a false representation is an essential element of the plaintiff's cause of action, the plaintiffs must prove that they were justified in relying upon the false representation, that they did rely upon it, and that they acted in reliance upon it to their injury. 24 Am. Jur., Fraud and Deceit, Section 264, page 98. In measuring their right to rely upon such representation, it has been said that every person must use reasonable diligence for his own protection. * * *"
In the discussion of the principles involved, the case of Potakar v. Hurtak, Fla. 1955, 82 So.2d 502, 503, which was written by Associate Justice Allen, who is now a member of this court, is in point, wherein the plaintiff had sought damages on account of vendor's allegedly false representation that restaurant had made profit in the past, and in dismissing his bill, the Court said:
"23 Am.Jur., Fraud and Deceit, p. 960, Sec. 155, states the general rule as to duty to investigate fraudulent statements. It is there stated: `The authorities are well agreed that the principle of right of reliance is closely bound up with a duty on the part of a representee to use some measure of protection and precaution to safeguard his interest. It is well settled, as a broad generalization, that a person to whom false representations have been made is not entitled to relief because of them if he might readily have ascertained the *827 truth by ordinary care and attention, and his failure to do so was the result of his own negligence. * * *"
We are not holding that the alleged fraud that existed from the first contract was sufficient for rescission, but we do hold that the plaintiff knew when he executed the amended contract on the 28th day of August that one or more of the defendants had allegedly been guilty of misrepresentation, which amended contract had specifically affirmed the July 24th contract, and he had no legal right to rely upon the alleged representations made to him by either Jeannette Taylor or Fred E. Crane.
The decree of the lower court will have to be affirmed.
Affirmed.
KANNER, C.J., and ALLEN, J., concur.