467 So.2d 311 (1985)
MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC., and Richard Mariotti, Petitioners,
v.
Lelia C. BENTON, Respondent.
No. 84-1319.
District Court of Appeal of Florida, Fifth District.
January 17, 1985.
Rehearing Denied April 15, 1985.
*312 Mary A. Edenfield and Lawrence J. Phalin, of Mater, Harbert, Frey, Bechtel & Phalin, P.A., Orlando, for petitioners.
Jere E. Lober, Merritt Island, for respondent.
COWART, Judge.
Petitioner, a stockbrokerage firm, established a business relationship with respondent, a customer, by the execution by the customer of certain contractual documents. Those documents were the standard forms for opening a CMA (cash management account) with petitioner. Those documents provided that any disputes between the parties arising out of their business dealings would be subject to arbitration.
Respondent filed a lawsuit against petitioner involving their dealings. Petitioner invoked the arbitration clause in the contractual document signed by respondent. Respondent admitted she signed the documents but alleged that she signed them without reading them because she cannot read the English language. After an evidentiary hearing the trial judge accepted respondent's position and denied petitioner's motion to stay the civil action and to compel arbitration. Petitioner seeks review by certiorari.
As a matter of law a party who voluntarily executes a document knowing it is intended to establish contractual relationships between the parties but without reading it is bound by its terms in the absence of coercion, duress, fraud in the inducement or some other independent ground justifying rescission.
No party to a written contract in this State can defend against it's enforcement on the sole ground that he signed it without reading it.

Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347 (Fla. 1977).
See Credit Alliance Corp. v. Westland Mach. Co., Inc., 439 So.2d 332 (Fla. 3d DCA 1983); Sabin v. Lowe's of Fla., Inc., *313 404 So.2d 772 (Fla. 5th DCA 1981); Alejano v. Hartford Acc. and Indem. Co., 378 So.2d 104 (Fla. 3d DCA 1979); John Deere Indus. Equipment Co. v. Roberts, 362 So.2d 65 (Fla. 1st DCA 1978); Reliable Finance Co. v. Axon, 336 So.2d 1271 (Fla. 2d DCA 1976); Manufacturers' Leasing, Ltd. v. Florida Development and Attractions, Inc., 330 So.2d 171 (Fla. 4th DCA 1976); Sutton v. Crane, 101 So.2d 823 (Fla. 2d DCA 1958).
Allied Van Lines, supra, also states:
Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding.
This means there are possible affirmative defenses by one who is confronted by a written contract he has signed. Affirmative defenses are in the nature of a confession and avoidance. In response to respondent's complaint in this law action petitioner asserted respondent's written agreement to arbitrate by a motion to stay the law action and compel arbitration. Respondent responded to the motion by an affidavit in which she confessed she signed the agreement and sought to avoid the result by alleging that she was unable to read because her education and national origin never gave her training in reading English and that the petitioner Richard Mariotti, an employee of the petitioner brokerage firm, knew that fact[1] and that the agreement was not read or explained to respondent.
We merely hold these facts do not invalidate the written agreement and do not constitute a sufficient legal defense to it. Persons not capable of reading English, as well as those who are, are free to elect to bind themselves to contract terms they sign without reading. In Sutton v. Crane, supra, the court quoted with approval from American Jurisprudence as follows:
... The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.
The burden is on the person who cannot read to know that he cannot read and if he desires to have an instrument read and explained to him to select a reliable person to do so before he signs it. Petitioner testified under oath that Mr. Mariotti did not know that she, the respondent, could not read English and that she did not ask Mr. Mariotti to read any of the documents to her and that he did not prevent her from reading them. There was no allegation or testimony whatsoever that the petitioners prevented respondent from reading the contract or induced her to refrain from reading it or in anyway prevented her from reading it or having it read to her by a reliable person of her choice.
The petition for certiorari is granted and the order denying stay and denying arbitration is quashed.
SHARP, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting:
I respectfully dissent.
Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347 (Fla. 1977), a case cited in the majority opinion holds:

*314 It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding.
It is a question of fact, only the trial judge could decide in this case, whether Mrs. Benton was "... induced by statements of the other party to refrain from reading the contract..."
It was uncontroverted evidence that appellee is not able to sufficiently understand the English language to know what she was signing in the agreement, and that she relied upon the broker to honestly and fully explain. She said "No, he asked me to sign it, so I trusted him, so I signed." It is clear the broker well knew she was at a disadvantage and that she placed her trust in him. The broker testified he explained the agreement's meaning but never "got into the contents of the paper itself" and did not give an explanation regarding arbitration.
Based upon a factual finding the trial judge ordered that she may proceed with her lawsuit without arbitration. Allied well supports that ruling. I would deny certiorari.
NOTES
[1] Respondent's signed affidavit was written in English and respondent later swore that her lawyer's secretary read it to her. However, at the evidentiary hearing respondent positively swore, contrary to her affidavit, that Mr. Mariotti did not know that respondent could not read English.