On Motion for Rehearing

ROTHENBERG, Judge.
We grant the appellant’s motion for rehearing and substitute the following opinion in its stead:
In this appeal, the defendant, Maritza Rivero (“Former Wife”), challenges the general magistrate’s interpretation of paragraph eight of the parties’ Marital Settlement Agreement (“MSA”) dated October 30, 2002, which was ratified by the trial court. Because we conclude that the magistrate and the trial judge correctly interpreted and applied both paragraph eight of the MSA and the law, we affirm.
The parties were married for approximately thirteen years. During their marriage, the Former Husband worked for Publix Super Markets, Inc. (“Publix”) and acquired a pension under an Employee Stock Ownership Plan (“ESOP”) through his employment with Publix. The contributions made by Publix to its employees’ ESOP accounts were based on each employee’s yearly wages. A substantial portion of the money contributed to the ESOP was invested in shares of Publix stock, while the remainder was placed in other investments held by the ESOP. Employees participating in the plan could elect to receive yearly dividends on the shares of stock held in their ESOP accounts.
Paragraph eight of the MSA specifies that the parties “have amicably divided all marital property” and provides that “[t]he Husband and Wife shall be entitled to ⅛ of the present value of the Husband’s profit sharing plan [ (ESOP) ]. The total approximate value is $300,000.00. The Wife shall not be entitled to receive her ½ interest until the Husband retires or *936 otherwise leaves his employment.” (Emphasis added).
When the parties signed the MSA, the actual value of the Former Husband’s ESOP was $287,146.95. This amount represents 7,149.7543 shares of Publix stock, valued at $40.00 per share, and $1,156.83 in other included investments. By December 1, 2004, the ESOP had increased by 746 shares of Publix stock to a total of 7,895.7543 shares, valued at $72.75 per share. From 2003 to 2005, the Former Husband received and retained one hundred percent of the yearly dividends of $0.40, $0.45, and $0.70 per share of Publix stock held, respectively.
On March 9, 2005, the Former Wife filed a Petition for Modification of Final Judgment in which she sought an increase in monthly alimony and child support payments based on a purported change in circumstances, including an increase in the Former Husband’s salary and the Former Wife’s expenses. This petition is still pending.
On October 3, 2005, the Former Husband filed a Verified Motion for Enforcement of the MSA and for Clarification of the Former Wife’s entitlement. The motion sought clarification of paragraph eight of the MSA and was filed in response to the Former Wife’s allegations that the Former Husband improperly retained the Former Wife’s share of annual dividends from the pension proceeds. On November 18, 2005, the Former Wife filed a Motion for Payment of Dividends and for an Order to Freeze ESOP Dividend Check. The Former Husband also filed a Verified Motion to Compel Publix to Immediately Release ESOP Dividends to Former Husband. The above motions were referred to a magistrate, and on January 9, 2006, the magistrate recommended that the trial court deny the Former Wife’s motion and grant the Former Husband’s motions.
The trial court ratified and affirmed the findings of the magistrate, finding that paragraph eight of the MSA is clear and unambiguous; the Former Wife’s interest in the Former Husband’s ESOP should be determined in dollars, not number of shares; the Former Wife is entitled to receive one-half of the total value of the ESOP at the time the parties executed their agreement, to be paid upon the Former Husband’s retirement or permanent leave from Publix; and the Former Wife is not entitled to receive any dividends or appreciation in value of the stock in the Former Husband’s ESOP. We agree.
The Former Husband is the exclusive owner of his Publix ESOP. Upon dissolution of the marriage, the ESOP ceased to be a marital asset. Willman v. Willman, 944 So.2d 1151, 1151 (Fla. 1st DCA 2006) (holding that a husband’s pension plan ceases to be a marital asset for the purposes of equitable distribution on the date of the filing of a petition for dissolution of marriage or upon the date the parties entered into a valid separation agreement). Because the Former Wife was awarded a monetary interest in the Former Husband’s pension plan rather than an ownership interest in the plan, she is not entitled to any appreciation in its value. See Burton v. Burton, 851 So.2d 861, 862 (Fla. 5th DCA 2003)(affirming final judgment of dissolution of marriage that awards former wife a specified monetary amount from the former husband’s pension but does not transfer any ownership interest in the pension itself); Doyle v. Doyle, 789 So.2d 499, 503 (Fla. 5th DCA 2001)(holding that the former wife was not entitled to the appreciation in value of the former husband’s pensions because the former wife had not actually been awarded the pension plans themselves, but rather had been “awarded a specific monetary interest in the husband’s pension plans”).
*937 A former spouse is not entitled to receive benefits that accrue after the dissolution of the parties’ marriage. Section 61.075, Florida Statutes (2003), states in pertinent part:
(1) In a proceeding for dissolution of marriage ... the court shall set apart to each spouse that spouse’s nonmarital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including .... (f) The desirability of retaining any asset ... intact and free from any claim or interference by the other party.
[[Image here]]
(5) As used in this section: (a) “Marital assets and liabilities” include: 1. Assets acquired ... during the marriage, individually by either spouse or jointly by them; 2. The enhancement in value and appreciation of nonmarital assets resulting from either party during the marriage....
§ 61.075(1)(f), (5)(a), Fla. Stat. (2003); see also Boyett v. Boyett, 683 So.2d 1140, 1141 (Fla.1996)(holding that it is not permissible for the former wife to benefit from the former husband’s labor after the divorce); Jahnke v. Jahnke, 804 So.2d 513, 516 (Fla. 3d DCA 2001)(holding that “assets should not, ordinarily, be valued as of a post-dissolution date because subsequent change in a property’s value due to non-marital labor or efforts cannot be distributed”); Brown v. Minning, 757 So.2d 628, 630 (Fla. 5th DCA 2000) (holding that “current law provides that a spouse should not receive benefits accrued after the dissolution of the parties’ marriage”). We, therefore, agree with the trial court that the MSA is not ambiguous and that based on the clear meaning of the language of the MSA and Florida law, the Former Wife is only entitled to' one-half of the value of the Former Husband’s ESOP at the time the MSA was signed, to be paid when the Former Husband retires or otherwise leaves his employment.
We also reject the Former Wife’s argument that because the MSA divides all other marital assets and liabilities equally between the parties, it follows that the ESOP should be divided equally as of the time of the signing of the MSA, and that the appreciation from each party’s respective half should be apportioned to the respective party. Contrary to the Former Wife’s claim, the MSA does not reflect that all of the marital assets and liabilities were divided equally. In particular, the MSA specifies that the Former Wife receive one hundred percent interest in the marital residence, valued at approximately $130,000.00, the furniture and appliances in the marital home, and the lease rights to a 2000 Chevrolet Impala, for which the Former Husband paid $385.00 monthly for a year following dissolution of the marriage. In addition, the Former Husband is required to pay the Former Wife $700.00 in alimony and $1,000.00 in child support per month. The Former Husband assumed $80,000.00 of marital debt, with no corresponding obligation to the Former Wife. The Former Husband retained sole interest in his 401-K retirement plan, worth approximately $35,000.00 at the time of the signing of the MSA. Thus, the Former Wife’s argument, that she should receive the dividends and appreciation of her claimed shares of stock from the ESOP because all other marital assets and liabilities were allegedly divided equally, is without merit and contrary to the plain, unambiguous language of the MSA.
We find equally unavailing the Former Wife’s claim that the magistrate committed reversible error in entering its re *938 port without considering the parties’ intent regarding paragraph eight of the MSA. As we agree with the trial court that paragraph eight is not ambiguous, parol evidence as to the parties’ intent was inadmissible.
The Former Wife’s final claim is that because she does not speak, read, or write English, she misunderstood the provisions contained in the MSA. The Former Wife, however, is presumed to know what she is signing and is charged with the duty of procuring a reliable person to explain the document to her prior to her signing it. As the Fifth District Court of Appeal stated in Merrill, Lynch, Pierce, Fenner Smith, Inc. v. Benton, 467 So.2d 311 (Fla. 5th DCA 1985),
The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so....
Benton, 467 So.2d at 313 (quoting Sutton v. Crane, 101 So.2d 823, 825 (Fla. 2d DCA 1958)(quoting 12 Am.Jur. Contracts § 137)); see also Keller v. Reed, 603 So.2d 717, 720 (Fla. 2d DCA 1992) (“[PJarties to a written instrument have a duty to learn and understand the contents of that instrument before signing it.”); Onderko v. Advanced Auto Ins., Inc., 477 So.2d 1026, 1028 (Fla. 2d DCA 1985) (“A party has a duty to learn and know the contents of an agreement before signing it.”).
Affirmed.