BENTON, J.
JoAnn Graham appeals an order granting post-judgment relief on grounds it fails to effectuate the marital settlement agreement she and Nathaniel Graham entered into in September of 1994 in anticipation of the dissolution of their marriage later that year. She maintains the trial court erred *627 both in calculating her share of the former husband’s 401(k) account and in calculating her share of his Army pension. Persuaded she is right in both instances, we reverse and remand.
The parties’ twenty-year marriage ended with a final judgment of dissolution of marriage, entered on December 22, 1994, which did not specifically address either Mr. Graham’s Army pension or his 401 (k) account. The judgment ordered instead that the “Agreement entered into by the parties at mediation is hereby confirmed and made a part of this Final Judgment of Dissolution of Marriage, and the parties shall comply with its terms and conditions in their entirety.” In September of 1994, the parties had signed a typewritten marital settlement agreement that gave Ms. Graham “10/23 of the Husband’s Army retirement as of the date of this agreement ... and 1/2 of the Husband’s 401K retirement as of July 24, 1993.” Although the marital settlement agreement called for entry of qualified domestic relations orders (QDROs) both for Ms. Graham’s share of the 401 (k) account and for her share of Mr. Graham’s military retirement benefits, no QDROs were entered at that time.
The parties communicated sporadically about the QDROs for the next sixteen years, but Ms. Graham did not formally petition for entry of the QDROs until 2010. The trial court took evidence and ultimately awarded Ms. Graham $18,111.49 as her portion of Mr. Graham’s 401 (k) account.[1] The trial court also awarded her $18,922.42 as her share of Army retirement benefits Mr. Graham had already received, and $401.39 per month as her share of his future Army retirement benefits.[2] Ms. Graham appeals both the $18,111.49 valuation and award of her share of the 401(k) account and the $401.39 monthly award based on Mr. Graham’s Army pension.
The 401 (k) Account
Below, Ms. Graham introduced expert testimony that her portion of the 401 (k) account was worth approximately $103,000. (When Mr. Graham closed this 401 (k) account in 2008, the whole account was worth $705,027.12.[3]) Mr. Graham, on the other hand, maintained Ms. Graham was entitled only to the value of her half share as of July 24, 1993, namely $18,111.49. He also introduced evidence that, if Ms. Graham was entitled to the present value of the account, her portion of the 401 (k) account should be valued at only around $37,000.[4] The trial court agreed with Mr. Graham’s primary contention, and awarded Ms. Graham $18,111.49. It refused to award interest or otherwise adjust for the present value of the account.
Interpretation of marital settlement agreements is subject to de novo review, just as any other contract interpretation is, at least in the absence of parol evidence. See, e.g., McIlmoil v. McIlmoil, 784 So.2d 557, 561-62 (Fla. 1st DCA 2001). As with any contract, the starting point is the language of the agreement. See Duval *628 Motors Co. v. Rogers, 73 So.3d 261, 265 (Fla. 1st DCA 2011). That the agreement is incorporated into a court decree does not alter the rule. Here, rather than granting Ms. Graham half the value of the 401(k) account as of July 24, 1993, the marital settlement agreement granted her half ownership in the 401(k) account (and its contents) as of that date. This ownership entitles her to gains (and puts her at risk of losses) on her share. See Hoffman v. Hoffman, 841 So.2d 695, 696 (Fla. 4th DCA 2003) (holding wife’s entitlement to a specific share of her husband’s IRA account carried with it an entitlement to an equal proportion of the gains and losses until distribution).
The phrase “1/2 of the Husband’s 401K” describes a one-half ownership interest in the 401 (k) account itself. Half ownership of any asset, real or tangible personal property, say — for example, a house— plainly means something other than entitlement to a fixed sum of money. The same is true of intangible personal property, the value of which may also fluctuate. If the parties wanted to agree to a specific dollar amount, they could have done so easily enough by specifying a sum certain. In the present case, the marital settlement agreement lacks not only a sum certain, but also any reference to the dollar value of the 401 (k) account. If the parties had wanted Ms. Graham to receive a fixed number of dollars, they should not have written the marital settlement agreement to give her one-half of the portfolio of investments then in the account. The agreement does not contain a dollar amount or speak in terms of the account’s value, as opposed to the account itself. Cf. Rivero v. Rivero, 963 So.2d 934, 935-36 (Fla. 3d DCA 2007) (determining provision that husband and wife “shall be entitled to 1/2 of the present value of the Husband’s profit sharing plan” awarded a monetary interest in the plan rather than an ownership interest, and that the former wife was therefore “not entitled to receive any dividends or appreciation in value of the stock” in the former husband’s plan).[5]
Mr. Graham argues that the language “as of July 24, 1993” limits Ms. Graham’s interest to one-half the dollar value of the 401(k) account on that date. But the language “as of July 24, 1993” simply serves to identify what was in the account as of that date. Thereafter, Mr. Graham was free to add and did add to the 401(k) account from time to time until his retirement. Anticipating this, the parties separated the post-dissolution portion of the 401 (k) account from that portion which constituted a marital asset. The phrase “as of July 24,1993” no more suggests that the parties intended to fix a specific monetary value than the “1/2 of the Husband’s 401K” language. By analogy, an agreement referencing Thistle Dew Farm as of a date certain serves to fix the acreage referred to, but the value of the acreage may fluctuate over time, and any additional acreage that may be annexed after the date certain is excluded.
*629 The present case resembles In re Marriage of Gardner, 973 S.W.2d 116, 118 (1998), where a dissolution of marriage decree entered September 21, 1993, gave the former wife “ ‘[a] fifty percent interest in [the former husband’s pension fund] as of December 31, 1991 ... [$]216,252.50.’ ” The QDRO effecting distribution to the former wife was not signed until June 24, 1997, and included a proportionate adjustment for the increased value of the pension plan. Id. at 126. The former husband appealed, arguing the trial court erred by awarding the former wife earnings on her share of the plan retroactive to December 31,1991, because the dissolution decree, he argued, did not purport to award the former wife earnings, having awarded her only a fifty percent interest in the plan “which, as of December 31, 1991, the trial court valued at $216,252.50.” Id. The court noted that, although the dissolution decree was silent regarding the earnings on the former wife’s share of the plan, “the decree was entered September 21, 1993, twenty-one months after the date used by the trial court to value [her] share (December 31,1991).” Id.
The appeals court ruled: “Obviously, at the time the decree was entered, earnings (or losses) on [her] share would have accrued since the valuation date.... Obviously, if the earnings on [her] share since December 31, 1991, were not credited to her, [the former husband’s] share would be credited with them.” Id. The former husband’s theory appeared to be that “because the [decree] did not specifically provide that [the former wife] was to receive the earnings (or losses) generated by her share in the Plan after December 31, 1991, the decree implicitly awarded such earnings (or losses) to him.” Id. at 127. The Missouri Court of Appeals rejected this argument: “That is nonsense. The effect of such a construction would be to award one party the earnings (or losses) generated by an adverse party’s assets.” Id.
Here, too, limiting Ms. Graham’s portion of the 401(k) account to half of its 1993 value would effectively award Mr. Graham money his wife’s assets generated. Had the 401 (k) account lost all of its value, Mr. Graham would now owe Ms. Graham nothing. By the same token, the 401(k) account’s growth did not entitle Mr. Graham to the increase in value of assets that were not his. Ms. Graham held a property interest in her half of the 401(k) account, necessarily including gains (or losses) attributable to those assets. See, e.g., Hoffman, 841 So.2d at 696 (“A former spouse may not have an interest in the other spouse’s assets or earnings after the final judgment of dissolution.... The final judgment awarded the Wife a portion of a fluctuating asset.... She is entitled to the gains or losses that accrue on her portion of the asset due to market fluctuations.”). We therefore reverse and remand with instructions that the trial court determine the present value of Ms. Graham’s half of what the 401 (k) account held as of July 24, 1993.
Retirement Benefits
Ms. Graham also appeals the recurring amount awarded to her from future monthly installments of Mr. Graham’s Army retirement benefits. Again we start with the language of the parties’ marital settlement agreement, which gave Ms. Graham “10/23 of the Husband’s Army retirement.” Although the rule was once otherwise, see Mansell v. Mansell, 490 U.S. 581, 588-89, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), state courts may divide a former service member’s “disposable retired pay” between spouses in accordance with 10 U.S.C. § 1408(c)(1) (2011). In order to arrive at the amount of Mr. Graham’s retirement benefits to which Ms. *630 Graham is entitled, the trial court had first to calculate his disposable retired pay.
In defining disposable retired pay, section 1408(a)(4) enumerates certain deductions from gross retired pay, including amounts which
are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member’s retired pay is being made pursuant to a court order under this section.
10 U.S.C. § 1408(a)(4)(D) (2011). The trial court ruled section 1408(a)(4)(D) required it to deduct from disposable retired pay the amount Mr. Graham was voluntarily paying towards a survivor benefit plan (SBP) for his current spouse.
At issue is whether this ruling was error, because, as Ms. Graham contends, the statute allows SBP premium payments to be deducted only if they are “being made pursuant to a court order under this section.” Mr. Graham argues that there would rarely be a need for a court order to require a spouse to pay for an SBP for a current spouse, and that the requirement of a court order pertains only to former spouses. But section 1408(a)(2) defines “court order” as:
[A] final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree ... which—
[[Image here]]
(C) in the case of a division of property, specifically provides for the payment of an amount ... from the disposable retired pay of a member to the spouse or former spouse of that member.
(Emphasis supplied.) The inclusion of “legal separation” in this language, along with the specific reference to a current spouse in section 1408(a)(2)(C), shows that Congress contemplated court orders requiring payments for current spouses and former spouses alike, and that court orders are required if SBP payments are to be deducted from a retiree’s disposable retired pay.
If the statute did not require a court order, moreover, a retired service member could reduce her or his disposable retired pay simply by choosing to provide an SBP for her or his current spouse. Effectively, as happened here, the retiree could unilaterally reduce the former spouse’s portion of the service member’s retirement benefits by voluntarily providing an annuity for a current spouse. It seems unlikely that Congress intended to confer such latitude. Discretion like this could, after all, be used to undermine the effect of state court decrees. In short, when calculating disposable retired pay, SBP premiums should be deducted from gross retirement pay only if they are being made pursuant to court order. The trial court erred by deducting Mr. Graham’s voluntary SBP premium payments when calculating his disposable retired pay.
In calculating Ms. Graham’s accumulated portion of Army retirement benefits Mr. Graham had previously received, the trial court correctly included cost of living adjustments. See Pullo v. Pullo, 926 So.2d 448, 451 (Fla. 1st DCA 2006). Since the award of future pension benefits must be revisited on remand, we need not address any issue of cost of living adjustments in that context now.
Reversed and remanded.
THOMAS and CLARK, JJ., concur.

. As of July 24, 1993, Mr. Graham's 401(k) account was worth $36,222.98. (Therefore, the value of Ms. Graham's share on that date was $18,111.49.) Mr. Graham had not yet begun to collect military retirement.

. In the order on appeal, the trial court used the "10/23” fraction to determine Ms. Graham's portion of the Army retirement benefits. Mr. Graham did not file a cross-appeal or otherwise contest this fraction.

. Mr. Graham and his employer made contributions to the plan after dissolution of the marriage, and the value of the initial investment grew.

. Counsel for Ms. Graham objected to the admissibility of this evidence, which was based on what Mr. Graham said were online print-outs from Yahoo Finance.

. In Rivero v. Rivero, 963 So.2d 934, 935-36 (Fla. 3d DCA 2007), the marital settlement agreement, dated October 30, 2002, provided that the "Husband and Wife shall be entitled to 1/2 of the present value of the Husband’s profit sharing plan [(ESOP)]. The total approximate value is $300,000.00. The Wife shall not be entitled to receive her 1/2 interest until the Husband retires or otherwise leaves his employment.”
On October 3, 2005, the former husband filed a motion seeking clarification of the former wife’s entitlement. On appeal, the court agreed with the trial court that the marital settlement agreement unambiguously provided the former wife’s interest should be determined in dollars, not in shares, and that she was entitled to receive one-half of the total value of the plan at the time the parties executed the agreement. Id. at 936.