[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12868
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-00633-GKS-KRS


GENE T. JACOBS,
an individual,

Plaintiff-Appellant,

versus

BRUCE D. CHADBOURNE, JR.,
an individual,

Defendant,

UNUM GROUP CORPORATION,
in its individual capacity and as controlling parent of its wholly owned subsidiary,
The Paul Revere Life Insurance Company, a Delaware corporation,
f.k.a. UNUM Provident Corporation,
THE PAUL REVERE LIFE INSURANCE COMPANY,
a Maine corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 3, 2018)

Before ED CARNES, Chief Judge, TJOFLAT, and NEWSOM, Circuit Judges.

PER CURIAM:

Gene Jacobs brought state law claims against the defendants, Unum Group

Corporation and the Paul Revere Life Insurance Company, after he did not receive

the amount of monthly benefits he thought he was entitled to receive under his

disability insurance policy.  The district court granted the defendants' motion for

summary judgment.  Jacobs appeals, contending that the district court erred in

granting summary judgment to the defendants on his promissory estoppel claims.

I.

In 1986 Jacobs purchased disability insurance from the defendants.  In

procuring the insurance he used the services of an independent broker, Bruce

Chadbourne.  Two years later Jacobs approached Chadbourne about adding

lifetime coverage to the policy.  The defendants issued Jacobs a "Lifetime Total

Disability Benefit Rider," which stated that the defendants will pay benefits if the

insured's disability begins before age 65 and continues until age 65.  It also

provided that Jacobs' maximum monthly insurance benefit of $5,000 would

2

decrease 10 percent for each year after age 55 until age 65, meaning that if he became totally disabled at, for example, 64 years old, his monthly benefit would be reduced by 90 percent. In 1992 Jacobs requested, and the defendants approved, an increase of the policy's maximum monthly benefit from $5,000 to $5,300.

In early 2003 Jacobs called the defendants to confirm the benefits in his disability policy, and in April the defendants faxed Chadbourne a letter outlining Jacobs' benefits. The fax cover sheet described the letter as a "summary outlining the benefits currently provided by the above referenced disability policy(s)." The letter provided the policy's issue date, the monthly premium, and the maximum monthly benefit of $5,300. It did not mention the lifetime rider or the 10 percent reductions described in that rider. The letter concluded: "This letter does not replace the actual contract issued to you previously by the Paul Revere Life Insurance Company. If you have any questions pertaining to this letter, please feel free to contact us . . . ."

In December 2011 Jacobs submitted a claim for total disability benefits based on a date of disability of November 15, 2011, which was less than a month before he turned 65.[1] The defendants accepted his claim and began paying benefits

---

[1] On November 10, 2011 — five days before the onset of Jacobs' disability — Jacobs emailed Chadbourne asking him to follow up with the defendants about another letter he had received about his disability policy. That same day Chadbourne emailed Jacobs and his wife, stating that certain benefits "are removed from the policy on your birthday, per the contract, so if you want to get disabled, you need to do it by your birthday while you still have lifetime coverage."

to him.  After the payments were reduced by 90 percent based on Jacobs' age on the date of disability (64 years old), he sued the defendants asserting promissory estoppel and negligent misrepresentation claims based on their failure to mention in the 2003 letter the lifetime rider's reductions.  Both sides moved for summary judgment, and the district court granted the defendants' motion and denied Jacobs' motion.  This is his appeal.

## II.

We review de novo a district court's grant of summary judgment.  Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015).  Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view the evidence in the light most favorable to Jacobs.  See Liebman, 808 F.3d at 1299.

## III.

## A.

Jacobs contends that the district court erred by charging him with knowledge of the contents of his insurance policy.  He argues that because Florida law does doesn't require an insured to read an insurance policy, he shouldn't have been charged with knowledge of his policy's terms.

Even though Jacobs was not required by law to read the contract, see Blumberg v. Am. Fire & Cas. Co., 51 So. 2d 182, 184 (Fla. 1951), under Florida

4

law he is still charged with knowledge of the contract's contents,[2] see Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347–48 (Fla. 1977) ("It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding."). Put simply, Florida law assumes that a party to a contract knows the terms of the contract but does not require that a party read it. See Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 166 So. 583, 584 (Fla. 1936) ("The insured was a party to the contract. The evidence shows that the contract was in his possession during the whole time from the date of delivery until insured died. . . . [U]nder this state of facts the insured was bound by the terms expressed in the contract and is charged with knowledge of the provisions of the contract."). Because Jacobs, as the insured, was a party to the contract, and because he had the policy and the lifetime rider in his possession, the district court did not err in charging him with knowledge of the contents of his policy.

---

[2] That general rule applies to all types of contracts, including disability insurance policies like the one at issue here. See, e.g., id. (contract for shipment of goods); Kimbal v. Travelers Ins. Co., 10 So. 2d 728, 730 (Fla. 1942) (group life insurance policy); Mass. Bonding & Ins. Co. v. Hoxie, 176 So. 480, 481 (Fla. 1937) (indemnity insurance policy); Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton, 467 So. 2d 311, 312 (Fla. 5th DCA 1985) (contract to open brokerage account); Sutton v. Crane, 101 So. 2d 823, 824 (Fla. 2d DCA 1958) (contract to purchase real property).

B.

Jacobs next contends that, in granting summary judgment to the defendants on his promissory estoppel claims, the district court erred by weighing the evidence.  He fails to point to any instances in the district court's order where the court weighed any of the evidence.  In any event, the court's order shows that the court did not weigh the evidence but instead found that Jacobs failed to raise a genuine issue of material fact that the defendants "misrepresented [his] coverage amounts or otherwise perpetrated fraud or other injustice sufficient to support [his] promissory estoppel claims."  And for that reason, the court entered summary judgment in favor of the defendants on those claims.

Jacobs also says the court "ignored" the evidence showing that he relied on the 2003 letter.  It didn't.  Instead, the court concluded that the evidence in the record was insufficient to show that the defendants made promises in the 2003 letter that they "should have reasonably expected to induce action or forbearance on [Jacobs'] part."  And for that reason, the court declined to address "whether and to what extent [he] read the 2003 Letter and detrimentally relied on representations" in it.  Because the district court did not have to address whether Jacobs relied on the 2003 letter, it did not "ignore" any evidence he presented about his reliance on it.

6

Jacobs lastly argues that the district court disregarded the changes he made in his errata sheet to his deposition testimony.  But the district court relied on a portion of his deposition testimony that Jacobs never "corrected" or changed in the errata sheet.  In any event, the changes Jacobs made in his errata sheet were not merely corrective changes but instead substantive changes that contradicted his deposition testimony.  As a result, even if the district court had disregarded those changes, it would not have been error for it to do so.  See Norelus v. Denny's, Inc., 628 F.3d 1270, 1281 (11th Cir. 2010) (collecting cases holding that an errata sheet is to be used for corrective changes, not contradictory or substantive changes, to deposition testimony).

**AFFIRMED.**