GROSS, C.J.
 

 We affirm the circuit court’s order compelling arbitration.
 

 Dr. Richard Shugarman went to work for the Palm Beach Eye Center in 2005. The two parties entered into a Professional Employment Agreement. The Agreement contains an arbitration clause, which stated in pertinent part:
 

 16. ARBITRATION. All controversies arising out of or connected with this Professional Employment Agreement, including any of its terms or conditions, the transactions contemplated hereby,
 
 *90
 
 or the alleged breach or enforceability of any of its terms or conditions, and including any controversy as to whether or not such dispute is arbitrable, shall be settled by arbitration....
 

 A numbered paragraph within the Agreement provided that Dr. Jay Wallsh-ein, the president of the Center, would act as its guarantor:
 

 26. GUARANTEE. As an inducement to Employee’s entry into this Agreement and as a continuing condition of Employee’s performance hereunder, the undersigned Guarantor, Jay Wallsh-ein, M.D. agrees to execute this Agreement as Guarantor and guarantee payment and performance of all obligations of the Corporation hereunder to and for the benefit of the Employee.
 

 Wallshein signed the Agreement twice. First, as the Center’s president. And, separately, as the Center’s “guarantor.” These two signatures appear along with Shugarman’s at the end of the Agreement.
 

 The Center terminated Shugarman’s employment in 2007. Thereafter, Shugar-man demanded arbitration against both the Center and Wallshein. His arbitration demand alleged that the Center violated its Employment Agreement with him and that Wallshein breached his written guaranty by failing to pay the amounts the Center failed to pay.
 

 From the circuit court, Wallshein sought a declaratory judgment that he was not required to arbitrate because he had no agreement to do so with Shugarman.
 

 Responding to Wallshein’s action, Shu-garman sought to compel arbitration, arguing that as the Center’s guarantor, Wallshein was bound by the arbitration provision of the Agreement. After a brief hearing, the circuit court granted Shugar-man’s motion to compel arbitration. It found that Shugarman and Wallshein had both signed the Employment Agreement, so that a valid and binding arbitration agreement existed, and concluded that as the guarantor of the Center’s obligations, Wallshein was bound by the arbitration provision.
 

 Wallshein contends the circuit court erred in compelling him to arbitrate because, as a guarantor, he was not a party to the Employment Agreement and thus, was not subject to the arbitration clause. He relies upon the Agreement’s language, and also makes the subjective argument that, as a guarantor, he did not intend to agree to arbitrate.
 

 We reject Wallshein’s arguments. The language of the Employment Agreement compelled Wallshein to arbitrate in his capacity as a guarantor. Because the language of a contract is viewed objectively to determine its scope, Wallshein’s after-the-fact reliance on his subjective intent in signing the Agreement as a guarantor does not alter the meaning of the Agreement.
 

 We review a trial court’s order compelling arbitration
 
 de novo. See Powertel, Inc. v. Bexley,
 
 743 So.2d 570, 573 (Fla. 1st DCA 1999). “[Tjhere are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.”
 
 Seifert v. U.S. Home Corp.,
 
 750 So.2d 633, 636 (Fla.1999). Here, the parties dispute only the first element — whether a valid agreement to arbitrate exists between Shugarman and Wallshein, as guarantor.
 

 In interpreting an arbitration agreement, courts resort to traditional rules of contract interpretation.
 
 See id.
 
 Thus, “the determination of whether an arbitration clause requires arbitration of a partic
 
 *91
 
 ular dispute necessarily ‘rests on the intent of the parties.’ ”
 
 Id.
 
 (quoting
 
 Seaboard Coast Line R.R. v. Trailer Train Co.,
 
 690 F.2d 1343, 1352 (11th Cir.1982)). The parties’ intent is best reflected by the plain language of the agreement.
 
 BallenIsles Country Club, Inc. v. Dexter Realty,
 
 24 So.3d 649, 652 (Fla. 4th DCA 2009). “The arbitration clause must be read together with the other provisions in the contract.”
 
 Id.
 
 (citation omitted). Shugarman’s subjective intent is not material in determining the meaning of the Employment Agreement. As the Florida Supreme Court wrote in
 
 Gendzier v. Bielecki,
 
 97 So.2d 604, 608 (Fla.1957), quoting Justice Oliver Wendell Holmes:
 

 The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs — not on the parties having meant the same thing but on their having said the same thing.
 

 (quoting Oliver Wendell Holmes,
 
 The Path of the Law,
 
 10 Harv. L. Rev. 457, 464 (1897)).
 

 Here, the plain language and organization of the Employment Agreement demonstrate that Wallshein was bound by the arbitration clause. The guaranty was a numbered paragraph within the Agreement, not a separate contract altogether. Wallshein agreed to “execute this Agreement” as a guarantor and “guarantee[d] payment and performance” of all of the Center’s obligations under it, objectively indicating Wallshein’s intent to be bound by the entire Agreement, not just one paragraph of it. Wallshein’s liability under the guarantee is a “controvers[y] arising out of or connected with” the Employment Agreement within the meaning of the arbitration clause.
 

 Asserting that the Agreement’s arbitration clause does not bind him, Wallshein relies primarily on
 
 Sitarik v. JFK Medical Center Limited Partnerships,
 
 7 So.3d 576, 577-78 (Fla. 4th DCA 2009), where we held that an anesthesiologist was not a party to an arbitration clause in a professional services agreement. The anesthesiologist had signed the agreement not as a party, but as a “Contractor’s Representative” in an addendum.
 
 Id.
 
 at 578. The arbitration clause in
 
 Sitarik
 
 bound “parties” to the agreement and we found that the agreement did not define a “Contractor’s Representative” as a “party.”
 
 Id.
 
 at 578-79.
 
 Sitarik
 
 is thus distinguishable from this case, because it involves a different contract and dissimilar operative language.
 

 Wallshein next argues that the circuit court erred because it did not conduct an expedited evidentiary hearing pursuant to section 682.03, Florida Statutes (2007). Subsection 682.03(1) provides that a party to an arbitration agreement may apply to a court for an order compelling a reluctant party into arbitration. That subsection describes the procedure the court must follow in considering the party’s application:
 

 If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.
 

 Florida courts have interpreted this statutory procedure as contemplating “an expedited evidentiary hearing.”
 
 Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed,
 
 425 So.2d 127, 128-29 (Fla. 4th DCA 1982).
 

 However, an evidentiary hearing is required only when “a substantial issue is raised” as to the making of the arbitration agreement.
 
 Linden v. Auto Trend, Inc.,
 
 
 *92
 
 923 So.2d 1281, 1288 (Fla. 4th DCA 2006). The circuit court “will decide if there is a disputed issue before setting the expedited evidentiary hearing.”
 
 Id.
 
 at 1282-83;
 
 see also Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.,
 
 920 So.2d 1286, 1289 (Fla. 4th DCA 2006) (holding that the trial court did not err in denying a motion to compel arbitration without holding an evidentiary hearing, because “no factual issues were in dispute and the issue of whether a valid arbitration agreement existed was a matter of law”).
 

 Here, Wallshein identified no issue to the circuit court that required an eviden-tiary hearing. The interpretation of the Employment Agreement was a question of law, not one of fact. The Agreement was not ambiguous, so there was no need for the circuit court to consider extrinsic evidence about the parties’ intent. What Wallshein subjectively believed when he executed the Agreement as a guarantor had no bearing on the application or interpretation of the arbitration clause.
 

 Affirmed.
 

 FARMER and STEVENSON, JJ., concur.