ALTENBERND, Judge.
The appellants, collectively referred to as “Spring Lake,” appeal an order denying their motion to compel arbitration in a wrongful death action arising from Jessie V. Holloway’s stay at Spring Lake’s rehabilitation center. The trial court refused to enforce the arbitration agreement that *917 Ms. Holloway signed when she entered the center. We must reverse this order.
The facts involved in this case are not complex. Ms. Holloway was a resident at the Spring Lake rehabilitation center from August 20, 2010, to January 4, 2011. When she entered the facility, she executed a standard resident admission and financial agreement and a separate arbitration agreement. At the time, she was 92 years old and had a fourth-grade education. She could not spell well and often had to sound out words while reading. She had memory problems and was increasingly confused. There is no evidence that the admissions staff at Spring Lake used any improper methods to obtain Ms. Holloway’s signature or that she was misled in any fashion.
The trial court declined to find that Ms. Holloway was incompetent or incapacitated to enter into a contract at the time of her admittance. It was persuaded, however, that the contracts were so complex that she could not possibly have understood what she was signing. Accordingly, it ruled that there was no meeting of the minds between the parties and that the arbitration clause was unenforceable.
We have little doubt that the trial court correctly assessed Ms. Holloway’s ability to understand these documents. For better or worse, her limited abilities are not a basis to prevent the enforceability of this contract. In a very similar case, this court explained:
As a general proposition, “[w]here one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results.” D.L. Peoples Group, Inc. v. Hawley, 804 So.2d 561, 563 (Fla. 1st DCA 2002) (citing Skinner v. Haugseth, 426 So.2d 1127, 1129 (Fla. 2d DCA 1983)); see also Mandell v. Fortenberry, 290 So.2d 3, 7 (Fla.1974) (“There is a presumption that the parties signing legal documents are competent, that they mean what they say, and that they should be bound by their covenants.”); Dodge of Winter Park, Inc. v. Morley, 756 So.2d 1085, 1085-86 (Fla. 5th DCA 2000) (“Generally, it is enough that the party against whom the contract is sought to be enforced signs it.”). Thus, “[a] party normally is bound by a contract that the party signs unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it.” Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500, 504 (Fla. 4th DCA 2003); see also Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347-48 (Fla.1977) (“It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding.”) Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc., 891 So.2d 558, 558 (Fla. 3d DCA 2004) (holding that the fact that the decedent was legally blind when she signed the arbitration agreement did not render the agreement invalid in the absence of evidence that she was coerced into signing it or prevented from knowing its contents). This is true whether a party is physically unable to read the agreement, see Estate of Etting, 891 So.2d at 558, or simply chooses not to read the agreement, see Fenelus, 853 So.2d at 504.
Rocky Creek Ret. Props., Inc. v. Estate of Fox ex rel. Bank of Am., N.A., 19 So.3d 1105, 1108 (Fla. 2d DCA 2009); see also SA-PG Sun City Ctr., LLC v. Kennedy, 79 So.3d 916, 920 (Fla. 2d DCA 2012) (reaffirming that a party’s alleged inability to understand an agreement does not vitiate her assent to that agreement in the ab *918 sence of some evidence that she was prevented from knowing its contents).
As a practical matter, a significant percentage of the people who enter nursing homes and rehabilitation centers have mental or physical limitations that make it difficult for them to understand the agreements signed at admittance. The agreements are sufficiently complex that many able-bodied adults would not fully understand the agreements. The same is probably true for most of the contracts that we sign for many consumer services and even for the agreements clients sign when they hire attorneys.
There was a time when most contracts were individually negotiated and handwritten. In that period, perhaps the law could adequately describe a mutual agreement as a “meeting of the minds” between the parties. But a literal “meeting of the minds,” requiring both parties to have a comparable, subjective understanding of their agreement is clearly not what the courts intend by the use of this phrase. Our modern economy simply could not function if a “meeting of the minds” required individualized understanding of all aspects of the typical standardized contract that is now signed without any expectation that the terms will actually be negotiated between the parties.[1] Without suggesting that the contract in this case is abusive in any fashion, the law must address abuses in standardized contracts by rules other than the “meeting of the minds.”
We note that the. issue addressed in Spring Lake NC, LLC v. Figueroa, 104 So.3d 1211 (Fla. 2d DCA 2012), has also been raised in this appeal. That issue was not the basis of the trial court’s ruling, and we do not reach the issue today.
Reversed and remanded.
NORTHCUTT and MORRIS, JJ., Concur.

. While case law still uses the phrase "meeting of the minds,” especially when the specific terms of an agreement are actually negotiated between the parties, see, e.g., Lunas v. Cooperativa de Seguros Multiples de P.R., 100 So.3d 239, 241 (Fla. 2d DCA 2012), criticism has prompted courts to analyze contracts as requiring a "mutuality of assent,” as a more objective concept. See 30 Williston on Contracts § 75:30 (4th ed. 2012) (noting that the expression, "meeting of the minds” has been repeatedly criticized as obsolete and archaic).