# Third District Court of Appeal

**State of Florida**

Opinion filed February 1, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1985
Lower Tribunal No. 12-19578
_____


**Kendall Imports, LLC, etc.,**
Appellant,

vs.

**Dianellys Y. Diaz, et al.,**
Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Akerman LLP, and Christopher S. Carver, Lawrence D. Silverman, and Lorayne Perez, for appellant.

Dorta Law, and Gonzalo R. Dorta, Matias R. Dorta, and Craig A. Applebaum, for appellees.


Before ROTHENBERG, EMAS, and FERNANDEZ, JJ.

ROTHENBERG, J.

## FACTS AND PROCEDURAL HISTORY

Kendall Imports, LLC ("Kendall") sold automobiles to Dayron Ortega ("Ortega"), Erislandis Marquez ("Marquez"), and Dianellys Y. Diaz ("Diaz") (collectively, "the Buyers"). The Buyers do not speak or read English. When the Buyers purchased their vehicles, they each signed two documents that were written in English—a purchase order ("purchase order") and a retail installment sales contract ("financing agreement") (collectively, "the documents"). Both the purchase order and the financing agreement contained arbitration clauses, but they were not identical.

The Buyers filed a class action lawsuit against Kendall and its finance director, seeking damages and alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), violations of the Motor Vehicle Retail Sales Finance Act, and unjust enrichment. Specifically, the Buyers alleged that after they signed the purchase order and financing agreement, Kendall filled in the blank spaces in these documents with extra fees and products without informing the Buyers or obtaining their consent.

Kendall filed a motion to compel arbitration based on the arbitration clauses in the purchase order and financing agreement. At the evidentiary hearing conducted on Kendall's motion to compel, there was no evidence presented that the Buyers were rushed or pressured into signing the documents, sought help in

2

translating the documents, or asked Kendall to clarify the terms of the arbitration clauses.

Following the evidentiary hearing, the trial court entered a non-final order, finding that the only discussions the sales staff had with the Buyers related to the financial terms, such as the purchase price and the monthly payments. Despite the Buyers' inability to speak or read English, Kendall did not attempt to explain the terms of the documents to the Buyers or inform them of the arbitration provisions in the documents. Moreover, the trial court found that the arbitration provisions in the purchase order and financing agreement conflict, and even if they had been written in Spanish, a reasonable person reading these documents would not have had a clear understanding of the precise terms and conditions needed to form a mutual agreement to arbitrate. Based on these findings, the trial court denied Kendall's motion to compel arbitration on two alternative grounds: (1) due to the conflicts between several of the provisions within the arbitration clauses in the purchase order and the financing agreement, Kendall and the Buyers did not have "a meeting of the minds" regarding an agreement to arbitrate and thus there was no valid agreement to arbitrate as a matter of law; and (2) even if the arbitration clauses were validly formed, they were unconscionable. Kendall timely appealed the trial court's non-final order.

## ANALYSIS

3

## I. Standard of Review

The trial court's entry of an order denying a motion to compel arbitration "presents a mixed question of law and fact." Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1023 (Fla. 4th DCA 2005) (citing Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 283 (Fla. 1st DCA 2003)). We review the trial court's legal determinations and interpretations of contracts de novo, Basulto v. Hialeah Auto., 141 So. 3d 1145, 1153 (Fla. 2014); Royal Palm Hotel Prop., LLC v. Deutsche Lufthansa Aktiengesellschaft, Inc., 133 So. 3d 1108, 1110 (Fla. 3d DCA 2014), and presume that the trial court's findings of fact are correct unless they are clearly erroneous. See Basulto, 141 So. 3d at 1155.

"[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). Only the first element—whether the parties formed a valid written agreement to arbitrate through the execution of the documents—is in dispute in the instant case.

## II. Whether a valid written agreement to arbitrate exists

As stated above, the trial court made several findings of fact, and based on those findings, it concluded as a matter of law that the parties did not form a valid

4

agreement to arbitrate.  As a threshold matter, we note that there is no dispute as to any of the trial court's factual findings except for the finding that, due to the conflicts between the arbitration provisions, no reasonable person would have understood that they were agreeing to arbitrate in the event of a dispute. In addition to the dispute as to this factual determination, the trial court's other factual findings are relevant based on the facts of this case.  Therefore, because the initial factual findings are relevant to the issue of formation and may have influenced the trial court's analysis, we address those findings first.

### A. **The relevance of the Buyers' inability to read or write English**

The trial court found, *inter alia*, that there was no agreement to arbitrate because the Buyers could not effectively communicate in English, and there was no evidence that anyone attempted to explain the documents, and specifically, the conflicting arbitration provisions to the plaintiffs. The trial court then likened the instant case to the "Basulto" case which generated a circuit court order memorialized in Basulto v. Hialeah Auto., L.L.C., 2007 WL 6623887 (Fla. Cir. Ct. 2007) ("Basulto I"); an opinion by this Court reviewing Basulto I, Hialeah Auto., LLC v. Basulto, 22 So. 3d 586 (Fla. 3d DCA 2009) ("Basulto II"); and an opinion by the Florida Supreme Court, Basulto v. Hialeah Auto., 141 So. 3d 1145 (Fla. 2014) ("Basulto III"). A review of the trial court's findings in Basulto I and the

5

Florida Supreme Court's opinion in Basulto III, however, demonstrates that the trial court's and the Buyers' reliance on "Basulto" is misplaced.

In Basulto I, the trial court found that the plaintiffs in that case did not speak, read, or write English; the documents presented to them were all in English; they were rushed into signing the documents; they were not given an opportunity to ask any questions; Potamkin's employees took it upon themselves "to explain everything to the plaintiffs" but either failed to explain the arbitration provisions or lacked a sufficient understanding to explain the arbitration provisions to the plaintiffs; the plaintiffs signed the documents which contained conditions that differed from what they were told were in the documents; and the dispute resolution provisions within the documents were inconsistent and irreconcilable. Based on these findings of fact, the trial court found that, as a matter of law, there was no meeting of the minds and thus there was no valid agreement to arbitrate.

In Basulto III, the Florida Supreme Court, citing to Tobin v. Michigan Mutual Insurance Co., 948 So. 2d 692, 696 (Fla. 2006), held that the trial court's factual findings are presumptively correct and must be upheld unless clearly erroneous. Basulto III, 141 So. 3d at 1155-56. The Court then held that the trial court's factual findings, as articulated above, were supported by the record. Id. at 1156. Lastly, the Court considered whether these factual findings supported the

6

trial court's legal determination that there was no meeting of the minds and thus no valid formation of an agreement to arbitrate. Id. at 1156.

In reaching the conclusion that the record supported the trial court's determination that there was no meeting of the minds, such that an enforceable agreement to arbitrate did not exist, the Florida Supreme Court specifically relied on its decision in Pepple v. Rogers, 140 So. 205, 208 (1932), and included in its reference to Pepple the following parenthetical:

> The general rule is that in order for a misrepresentation to be ground for rescission and cancellation, it must be with reference to some material fact or thing, unknown to the complainant, either from his not having examined, or for want of opportunity to be informed, or from his entire confidence reposed in the defendant . . . .

Basulto III, 141 So. 3d at 1156. From the specific inclusion of this parenthetical in its holding that the trial court's finding that there was no meeting of the minds was supported by the record, it is clear that the Florida Supreme Court's holding was premised, at least in part, by the misrepresentations made by Potamkin's employees to the plaintiffs.

The trial court's reliance on "Basulto" in the instant case is misplaced because the facts in the instant case are totally dissimilar. In fact, the only fact the instant case shares with "Basulto" is that the Buyers could not read or write English and the forms they signed were in English. There is absolutely no evidence in the record before this Court that the Buyers in the instant case were rushed,

7

pressured, or coerced into signing the documents; that they were not given an opportunity to ask questions or seek assistance in interpreting the documents; or that they even attempted to understand what they were signing. Kendall's employees did not take it upon themselves "to explain everything to the plaintiffs," omit discussing the arbitration provisions, incorrectly explain what these provisions meant, or misrepresent the effect of these provisions.

Rather, the Buyers in the instant case have admitted that they signed the documents in question without attempting to read them or learn what they were agreeing to, with the exception of the financial terms, such as the costs, monthly payments, etc. They did not tell anyone they could not read the documents they were signing because they did not speak or read English, and there is no evidence that Kendall's employees were even aware that the Buyers could not and did not read the documents. In fact the financial agreement specifically provided the following statement directly above the Buyers' signature line:

> You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

We, therefore, conclude that "Basulto" does not control the analysis, and thus we apply the general and longstanding legal principles regarding contract formation.

8

We begin that analysis with the well-established principle that one who signs a contract is generally bound by the contract. In <u>Allied Van Lines, Inc. v. Bratton</u>, 351 So. 2d 344, 347-48 (Fla. 1977), the Florida Supreme Court articulated this principle of law in no uncertain terms:

> It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.

<u>See also</u> <u>Spring Lake NC, LLC v. Holloway</u>, 110 So. 3d 916, 917 (Fla 2d DCA 2013) (finding that although Ms. Holloway was 92 years old, had a fourth-grade education, could not spell, often had to sound out words while reading, had memory problems, was increasingly confused, and she "could not possibly have understood what she was signing" when she signed a financial agreement containing an arbitration agreement, she was nevertheless bound by the agreement where there was no evidence that the admissions staff at Spring Lake used any improper methods to obtain her signature or misled her, and that "[f]or better or worse, her limited abilities are not a basis to prevent the enforceability of this contract"); <u>Rocky Creek Ret. Props., Inc. v. Estate of Fox</u>, 19 So. 3d 1105, 1108 (Fla. 2d DCA 2009) (holding that a party is generally bound by a contract the party signs unless he was prevented from reading the contract or induced by the other party to refrain from reading it, and "[t]his is true whether a party is physically

9

unable to read the agreement, or simply chooses not to read the agreement") (internal citation omitted); Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc., 891 So. 2d 558, 558 (Fla. 3d DCA 2004) (affirming an order compelling arbitration even though the party contesting arbitration was legally blind at the time she signed the agreement containing the arbitration clause).

In Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton, 467 So. 2d 311, 313 (Fla. 5th DCA 1985), the Fifth District Court of Appeal held;

> Persons not capable of reading English, as well as those who are, are free to elect to bind themselves to contract terms they sign without reading. . . . The burden is on the person who cannot read to know that he cannot read and if he desires to have an instrument read and explained to him to select a reliable person to do so before he signs it.

Thus, the Fifth District concluded that although the brokerage firm's employee was allegedly aware that Ms. Benton could not read English, the fact the employee did not read or explain the contractual documents, which contained an arbitration clause, to Ms. Benton was insufficient to invalidate the documents or to constitute a defense to them, where Ms. Benton did not allege or testify that the firm prevented her from reading the documents, induced her to refrain from reading them, or prevented her from having them read to her by a reliable person of her choice. Id. at 311.

This Court was presented with a similar situation in Rivero v. Rivero, 963 So. 2d 934, 938 (Fla. 3d DCA 2007), wherein the former wife sought to avoid

certain provisions in an executed marital settlement agreement based on her claim that because she did not speak, read, or write English, she did not understand the terms of the agreement, which were written in English. In rejecting Ms. Rivero's argument, this Court relied on Benton, specifically citing to the following quote:

> The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so.

Rivero, 963 So. 2d at 938 (quoting Benton, 467 So. 2d at 313) (quoting Sutton v. Crane, 101 So. 2d 823, 825 (Fla. 2d DCA 1958) (quoting 12 Am. Jur. Contracts § 137))); see also Keller v. Reed, 603 So. 2d 717, 720 (Fla. 2d DCA 1992) (holding that "parties to a written instrument have a duty to learn and understand the contents of that instrument before signing it").

Applying the law to the facts of the case before us, we conclude as follows. Although the Buyers contend that they could not read the purchase order or the financing agreement because they were in English and they could not read English, the burden squarely rested on the Buyers to seek clarification of the terms of these documents. The Buyers, however, failed to ask about the terms of the documents they were signing, and nothing in the record suggests that Kendall misrepresented the terms or prevented the Buyers from reading the documents. Instead, the Buyers

11

blindly signed the purchase order and the financial agreement, willfully agreeing to whatever the terms were. Therefore, we find that the trial court erred as a matter of law by invalidating the arbitration agreement on this basis.

**B. Whether the alleged conflicts between the arbitration provisions contained in the purchase order and the financing agreement affected the Buyers' ability to understand the terms.**

The Buyers contend, and the trial court found, that the arbitration provisions contained in the documents are unenforceable because the terms and conditions of the arbitration agreements "are in direct conflict with one another" and these conflicts "are irreconcilable." Of most concern to the trial court was the alleged conflicts as to the dispute resolution terms, although the trial court, in conclusory fashion and without elaboration, also listed several other perceived conflicts: choice of law, rights of appeal, costs of arbitration, attorney fees, location of arbitration, delegation of issues, and class actions.

We begin our analysis by reiterating basic principles of law relevant here. First, it is well-settled law that a single term in an arbitration clause cannot be interpreted in isolation, but must be read together with the rest of the contract. Bari Builders, Inc. v. Hovstone Props. Fla., LLC, 155 So. 3d 1160, 1162 (Fla. 4th DCA 2014) ("The arbitration clause must be read together with the other provisions in the contract."); Phoenix Motor Co. v. Desert Diamond Players Club, Inc., 144 So. 3d 694, 696 (Fla. 4th DCA 2014) ("Where two or more documents are executed by

12

the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, **they will be read and construed together**.") (quoting Collins v. Citrus Nat'l Bank, 641 So. 2d 458, 459 (Fla. 5th DCA 1994)) (emphasis added). Importantly, the presence of additional dispute resolution provisions will not, *per se*, create an irreconcilable conflict if the terms can be read in a complementary fashion. See Bari Builders, 155 So. 3d at 1162.

"A primary rule of contract construction is that where provisions in an agreement appear to conflict, they should be construed so as to be reconciled, if possible." Arthur Rutenberg Corp. v. Pasin, 506 So. 2d 33, 34 (Fla. 4th DCA 1987). Thus, where the two arbitration clauses appear to be in conflict, or where an arbitration clause appears to conflict with another provision of the contract, the court must try to reconcile the conflicting provisions, just as it would do with any other contract provision. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 64 (1995) (harmonizing an arbitration clause with a choice-of-law provision so as to resolve potential conflict as to the availability of punitive damages in the arbitration proceeding); H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffers & Helpers Local Union No. 384, 755 F.2d 324, 329 (3d Cir. 1985) (reconciling seemingly conflicting provisions in recognition of the legal principles "that *all* contractual provisions be read to make sense, and that arbitration be favored") (emphasis in original).

Thus, the trial court in the instant case was required to read the two arbitration clauses in a complementary fashion in an attempt to resolve any conflict so as to give effect to each term in the parties' written agreements and to uphold their agreement to arbitrate. Had the trial court done that, then it would have discovered no actual conflict as to the Buyers' obligation to arbitrate their claims against Kendall.

The arbitration provisions contained in the purchase order and the financing agreement are as follows.

Purchase order:

> **MEDIATION, ARBITRATION AND WAIVER OF TRIAL BY JURY: ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THIS ORDER OR TO THE VEHICLE OR WITH RESPECT TO ANY CLAIM ARISING BY VIRTUE OF ANY REPRESENTATIONS ALLEGED TO HAVE BEEN MADE BY THE DEALER OR DEALER'S REPRESENTATIVE, SHALL BE SETTLED AND FINALLY DETERMINED BY MEDIATION OR BINDING ARBITRATION AS PROVIDED BY AND IN ACCORDANCE WITH THE FLORIDA ARBITRATION CODE. THIS ARBITRATION AGREEMENT IS TO BE INTERPRETED TO COVER ALL POTENTIAL CLAIMS ARISING IN TORT, CONTRACT, FLORIDA OR FEDERAL STATUTES, OR COMMON LAW, INCLUDING CLAIMS FOR PERSONAL INJURIES RESULTING FROM ALLEGED DEFECTS IN THE VEHICLE.** The claim will first be submitted for non-binding mediation to a mediator certified by the Florida Supreme Court. If the parties are unable to agree upon a mediator, either party can petition the appropriate Miami-Dade County Court for the appointment of a mediator. If not resolved by mediation, the claim will be submitted to a single agreed upon arbitrator. If the parties are unable to agree upon an arbitrator, either party can petition the appropriate Miami-Dade County Court for the

14

appointment of an arbitrator. The parties agree that the final arbitration hearing shall take place within six months from the selection of any arbitrator. The arbitrator can extend the final hearing for an additional six months if he finds highly exceptional circumstances justifying such an extension. A judgment upon the award rendered by the arbitrator may be entered in any Miami-Dade County Court having jurisdiction of the matter. However, any disputes wherein the Purchaser or dealer seeks damages of less than $5000.00, excluding costs and attorneys' fees, shall be resolved in the small claims court of Miami-Dade County. In the event that any such small claims suit is filed in a Miami-Dade County Court and an amendment to the pleadings or counterclaim results in a claim for damages in excess of $5000.00, then this binding arbitration shall apply and the parties agree to jointly dismiss or stay the small claims proceedings and proceed with the requirements of this paragraph. The cost of the mediation and arbitration proceedings shall be borne equally by Dealer and Purchaser. All mediation and arbitration proceedings are to take place physically in Miami-Dade County, Florida. **IN THE EVENT THAT THE PARTIES MUTUALLY AGREE IN WRITING TO AVOID ARBITRATION OR IF A COURT OF COMPETENT JURISDICTION DETERMINES THAT A PARTICULAR DISPUTE BETWEEN THE PARTIES IS NOT SUBJECT TO THIS ARBITRATION PROVISION AND IT BECOMES NECESSARY FOR EITHER PARTY TO LITIGATE A DISPUTE BETWEEN THE PARTIES, THEN, IN THAT EVENT, THE PARTIES HEREBY MUTUALLY WAIVE THEIR RIGHT TO A TRIAL BY JURY, AND AGREE THAT ANY SUCH LITIGATION SHALL BE IN A COURT OF COMPETENT JURISDICTION LOCATED IN MIAMI-DADE, COUNTY, FLORIDA.** In any mediation arbitration or litigation proceedings between the parties, the prevailing party shall be entitled to recover reasonable attorneys' fees, and, in the event [sic] litigation, the cost of litigation on all levels including any appeals.

Financing agreement:

**ARBITRATION CLAUSE**
**PLEASE REVIEW – IMPORTANT - AFFECTS YOUR**
**LEGAL RIGHTS**

15

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arbforum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contracting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the

16

Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

We now address each of the "irreconcilable conflicts" identified by the trial court. We begin with the conflict which the trial court found was especially "problematic" and the only conflict specifically addressed in the trial court's order.

1. <u>The obligation to arbitrate and waiver of a jury trial</u>

A review of the purchase order reflects that it requires that all claims for damages in excess of $5,000 be submitted for non-binding mediation, and if they are not resolved by mediation, they are to be resolved by binding arbitration unless both parties agree in writing to avoid arbitration or the court determines that the dispute is not subject to arbitration. In the event the dispute is litigated, the parties waive their right to a jury trial.

The financing agreement provides for arbitration if either party so elects (in other words unless both sides agree not to arbitrate the dispute). Although the financing agreement could be read to allow for a jury trial if the dispute is not submitted for binding arbitration, this potential conflict is totally irrelevant to the instant analysis because it is undisputed that Kendall has demanded binding arbitration, and therefore, under both the purchase order and the financing agreement, the Buyers must resolve their claims by binding arbitration, which obviously precludes any consideration of a jury trial. Because Kendall has demanded arbitration, there clearly is no "irreconcilable" conflict between the two arbitration provisions.

18

We also find no irreconcilable conflict between the requirement in the purchase order to submit all claims to non-binding mediation prior to submitting the claims to binding arbitration unless the parties agree in writing to avoid arbitration, and the financing agreement, which contains no such requirement. Because the purchase order requires non-binding mediation, the purchase order and financing agreement, when read together, require non-binding mediation. There is no irreconcilable conflict between them. Although none of the parties have asked to submit the claims to non-binding mediation, they were certainly permitted to do so. Thus, if any of the parties had invoked his, her, or its right to non-binding mediation under the purchase order, that request likely would have been granted. However, we note that, as with arbitration clauses, mediation can be waived. DVDPlay, Inc. v. DVD 123 LLC, 930 So. 2d 816, 820 n.2 (Fla. 3d DCA 2006) (stating that a party waived mediation because, although the contract contained an enforceable mediation clause, the party "never sought to judicially compel mediation, and instead it filed a lawsuit"); see also Coastal Sys. Dev., Inc. v. Bunnell Found., Inc., 963 So. 2d 722, 724 (Fla. 3d DCA 2007) ("A party who actively participates in a lawsuit waives the right to arbitration."); Morrell v. Wayne Frier Manufactured Home Ctr., 834 So. 2d 395, 397-98 (Fla. 5th DCA 2003). Because none of the parties have requested non-binding mediation, we

decline to express an opinion as to whether the contractual right to mediation has been waived.

Thus, there is clearly no irreconcilable conflict between the purchase order and the financing agreement precluding the enforcement of the arbitration provisions contained in these two documents and to which all of the parties have agreed.

2. The choice of law provisions

The purchase order provides that arbitration is to be "in accordance with the Florida Arbitration Code." The financing agreement provides that the Buyers may choose any of the following arbitration organizations and its applicable rules to arbitrate their claims: the National Arbitration Forum, the American Arbitration Association, or any other organization subject to Kendall's approval. Further, any arbitration under the arbitration clause shall be governed by the Federal Arbitration Act (9 U.S.C. §1 et. seq.) and not by any state law concerning arbitration.

While, at first blush, it would appear that the two choice of law provisions are in conflict, had the trial court attempted, as it was required, to resolve the conflict, it would have actually discovered that these two provisions are not in conflict. First, as the Florida Supreme Court has said not once, but twice, "[i]n Florida, an arbitration clause in a contract involving interstate commerce is subject to the [FAC], to the extent that the FAC is not in conflict with the FAA." Visiting

20

Nurse Ass'n of Fla., Inc., 154 So. 3d 1115, 1124-25 (Fla. 2014); see also Shotts v. OP Winter Haven, Inc., 86 So. 3d 456, 463-64 (Fla. 2011); CT Miami, LLC v. Samsung Elec. Latinoamerica Miami, Inc., 201 So. 3d 85, 90 n.3 (Fla. 3d DCA 2015) (acknowledging the Florida Supreme Court's opinion in Shotts and finding that although the FAC governs the proceedings to the extent it does not directly conflict with the FAA, "[t]he sections of the FAC and FAA relevant to the determination of this appeal, however, are virtually identical,' . . . so the determination is not dispositive of the case at bar").

As in CT Miami, this Court recognizes the Florida Supreme Court's holdings in Shotts, 86 So. 3d at 463, and Visiting Nurse Ass'n of Florida, 154 So. 3d at 1224-25, and notes that although the FAA controls when a transaction involves interstate commerce, "[i]n Florida, an arbitration clause in a contract involving interstate commerce is subject to the [FAC], to the extent the FAC is not in conflict with the FAA." Shotts, 86 So. 3d at 463. However, whether the FAA or FAC controls in the instant case is not determinative of whether there exists irreconcilable conflict between the purchase order and the financing agreement because we find, as this Court found in CT Miami, "[t]he sections of the FAC and FAA relevant to the determination of this appeal, however, are 'virtually identical.'" CT Miami, 201 So. 3d at 90 n.3. Thus, our decision is in no way based on a finding of preemption. Rather, our finding is based on the failure of the

Buyers to demonstrate any irreconcilable differences between the FAC and the FAA relevant to this case.

Although the Buyers argued that there were three specific irreconcilable differences between the FAC and the FAA, our review demonstrates that these specific provisions are not in conflict. First, the Buyers attempt to show a conflict between certain provisions of the Revised Florida Arbitration Code (the "RFAC") and the FAA. However, the arbitration agreements at issue in this case were entered into in 2008 and 2011. (Kendall sold Dayron Ortega a new automobile in 2008, and sold Erislandis Marquez and Dianellys Y. Diaz a used automobile in 2011). The RFAC "governs an agreement to arbitrate made on or after July 1, 2013." § 682.013, Fla. Stat. (2016); see also CT Miami, 201 So. 3d at 91 (noting that "the parties correctly agree that the pre-2013 version of the [FAC] applies because the contract at issue was drafted and signed in 2009"). Because the arbitration agreements at issue in this case were entered into prior to July 1, 2013, the Buyers' reliance on the RFAC in an attempt to find a conflict between the FAC and the FAA is misplaced.

The Buyers' second argument—that the FAC and the FAA provide different time limitations in which to file an application to modify or correct an award is incorrect. Both the FAA and the FAC provide for a three-month time limit to

modify or correct an award. See 9 U.S.C. § 12; §§ 682.13(2), 682.14 (1), Fla. Stat. (2012).

Lastly, the Buyers contend that because the FAC does not allow for a waiver of representation, and the FAA is silent on this issue, there is an irreconcilable difference between the two. However, because the FAA is silent as to this issue, the FAC controls and there is no conflict.

A review of the relevant provisions of the FAC and the FAA demonstrates that they are substantively nearly identical. Because the Buyers have not identified any relevant irreconcilable differences between the FAC and the FAA, there is no conflict between the choice of law provisions in the purchase order and the financing agreement. There is no conflict to resolve, and certainly no justification for invalidating the arbitration provisions contained in the documents the Buyers signed when they purchased their automobiles from Kendall.

### 3. Location of the arbitration

The purchase order provides that all mediation and arbitration proceedings are to take place in Miami-Dade County. The financing agreement states that the arbitration hearing shall be conducted in the federal district in which the Buyers reside unless the "Creditor-Seller" (which in this case is Kendall) is a party to the claim or dispute, in which case, the hearing will be held in the federal district where the contract was executed.

As is readily obvious, these two provisions, under the facts of this case do not conflict and are easily harmonized. The contracts in question were executed in Miami-Dade County, which is in the federal Southern District of Florida, and is where the Buyers filed their lawsuit against Kendall.

4. Delegation of issues

"The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69 (2010). The financing agreement authorizes the arbitrator to decide "the interpretation and scope of the Arbitration Clause, and the arbitrability of the claim or disputes." The purchase order, on the other hand, is silent.  Thus, there is no conflict between the purchase order and the financing agreement on the issue of delegation.  More importantly, because there is no dispute in this case that the Buyers' claims fall within the scope of the broad arbitration provisions, there is certainly no "irreconcilable conflict."

5. Class actions

Although the financing agreement expressly bars class action proceedings and the purchase order is silent as to class actions, this does not create an "irreconcilable conflict" as the trial court found. Had the trial court attempted to harmonize the two provisions and resolve potential conflict, it would have discovered that under the FAA "a party may not be compelled . . . to submit to

class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 684 (2010); <u>see also</u> <u>Anderson v. Maronda Homes, Inc. of Fla.</u>, 98 So. 3d 127, 130 (Fla. 2d DCA 2012) (Larose, J., concurring) ("Assent to class arbitration is needed; agreement cannot be inferred from silence."). Because the financing agreement expressly bars class action proceedings and, in the purchase order, the parties did not expressly agree to permit class actions, then under both documents, class actions are not permitted.

   6. <u>Cost of arbitration</u>

   The purchase order provides that the cost of the mediation and the arbitration proceedings shall be borne equally by Kendall and the Buyers. In the financing agreement, Kendall agreed to advance the Buyers' "filing, administration, service or case management fee and the [Buyers'] arbitrator or hearing fee" up to $2500, which, at the discretion of the arbitrator, may be reimbursable. As Kendall aptly noted, "[t]hese provisions can be reconciled by requiring the Dealer to advance the fees of arbitration up to a maximum of $2500 before requiring that the Dealer and the Purchaser bear the remaining costs of arbitration equally." Thus, there is clearly no "irreconcilable conflict."

   7. <u>Right to appeal</u>

25

As a matter of law, there is no right to appeal the merits of an arbitrator's award. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 588-90 (2008). An arbitrator's award may be set aside on very limited statutory grounds. See id. Both arbitration provisions provide for arbitration by a single arbitrator. The financing agreement contains a provision that in the event the arbitrator's award is $0 or in excess of $100,000, or it includes an award granting injunctive relief, then a party may request a new arbitration by a three-arbitrator panel. Thus, under Mastrobuono, 514 U.S. at 64; H.C. Lawton, Jr., Inc., 755 F.2d at 329; and Arthur Rutenberg Corp., 506 So. 2d at 34, the trial court was required to harmonize the two arbitration clauses and conclude that because the purchase order was silent as to this issue, and the parties agreed to this procedure in the financing agreement, then the parties agreed to the procedure. As such, there is no "irreconcilable conflict."

8. Attorney's fees

The purchase order provides that the prevailing party shall be entitled to recover reasonable attorney's fees; whereas the financing agreement provides that each party shall be responsible for its own attorney's fees "unless awarded by the arbitrator under applicable law," and "the arbitrator shall apply governing substantive law in making an award." Since FDUPTA entitles the prevailing party

26

to recover its fees, see § 501.2105, Fla. Stat. (2012), there is no conflict, let alone "irreconcilable conflict."

We also specifically note that under basic contract principles, conflicts within the written agreement are to be construed against the drafter, which in this case is Kendall. Goodwin v. Blu Murray Ins. Agency, Inc., 939 So. 2d 1098, 1102 (Fla. 5th DCA 2006) ("To the extent any ambiguity exists in the interpretation of the contract, it will be strictly construed against the drafter."); Tannen v. Equitable Life Ins. Co. of Washington, D.C., 303 So. 2d 352, 355 (Fla. 3d DCA 1974) (stating that "any ambiguity of language within the contract will be strictly construed against the party who chose the language and drafted the contract"). Thus, for example, if there was a conflict between the two arbitration provisions as to whether the prevailing party was entitled to its fees, **which could not be reconciled**, then that conflict must be construed in favor of the Buyers. But whether the prevailing party will be entitled to its fees also is not relevant to the issue of whether there exists a valid agreement to arbitrate. This is typically an issue to be resolved by the arbitrator.

In sum, had the trial court actually scrutinized the two arbitration clauses, and attempted to harmonize them as it was required to do, it would have discovered no irreconcilable conflict so as to vitiate the Buyers' agreement to arbitrate their claims against Kendall.

27

We also cannot ignore the fact that in this case, the Buyers are seeking avoidance of the arbitration clause contained in the contracts they signed without attempting to read or learn what provisions they were agreeing to, other than the financial terms associated with the purchase of their vehicles. They are not claiming that they were confused by their own interpretation of the terms contained in the arbitration clauses or that their interpretation differed from that explained by Kendall's employees when they signed the documents. In other words, these particular plaintiffs do not claim they were confused or misled by the terms, nor can they, because they did not attempt to learn what the terms were. They did not attempt to read them, tell anyone they could not read them, ask any questions, ask that the documents be read to them, or ask anyone to explain them. They also admit that no one attempted to explain the documents to them (other than the financial terms) and therefore no one omitted an explanation of the arbitration clauses or misrepresented what they provided. Instead, the Buyers blindly signed the documents willfully agreeing to whatever the terms were and specifically acknowledged that they had read both sides of the documents, including the arbitration clauses before signing, and that they were agreeing to the terms of the documents.

## III. Unconscionability

The trial court additionally found that the terms of the arbitration clauses were unconscionable. We highlight that the party seeking to avoid arbitration has the burden to prove both procedural and substantive unconscionability. Murphy v. Courtesy Ford, L.L.C., 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006). "[W]hile both elements must be present, they need not be present to the same degree." Basulto III, 141 So. 3d at 1159. Procedural unconscionability deals with whether, given the totality of the circumstances, the parties had a meaningful choice to refuse the contract terms. DePrince v. Starboard Cruise Servs., Inc., 163 So. 3d 586, 595 (Fla. 3d DCA 2015). Substantive unconscionability deals with the reasonableness of those terms. Murphy, 944 So. 2d at 1134.

While a contract of adhesion could indicate procedural unconscionability in some circumstances, "the presence of an adhesion contract alone does not require a finding of procedural unconscionability." VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc., 912 So. 2d 34, 40 (Fla. 4th DCA 2005); see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346-47 (2011) (stating that "the times in which consumer contracts were anything other than adhesive are long past"). It is important to inquire into additional surrounding circumstances, such as whether a party could obtain the desired product or services elsewhere, whether one party pressured or rushed the other into signing a contract, or whether the party was otherwise precluded from inquiring into the terms of the agreement. See DePrince,

29

163 So. 3d at 595; <u>Fonte</u>, 903 So. 2d at 1026-27; <u>Orkin Exterminating Co. v. Petsch</u>, 872 So. 2d 259, 265 (Fla. 2d DCA 2004); <u>Gainesville Healthcare Ctr.</u>, 857 So. 2d at 285-288 (holding that the trial court's findings were insufficient to prove procedural unconscionability where the contract was pre-printed, the plaintiff did not understand the terms of the contract, and no one explained the terms to the plaintiff).

The trial court found that the arbitration clauses were procedurally unconscionable because: (1) the terms of the arbitration clauses in the purchase order and the financing agreement conflicted, such that there was no meaningful disclosure of the terms by which the Buyers would be bound; (2) the contracts containing the arbitration clauses were offered on a "take-it-or-leave-it" basis, such that the Buyers had no meaningful choice or opportunity to negotiate the terms; and (3) Kendall failed to explain the arbitration provisions to the Buyers in Spanish.

For the reasons we have already discussed, the terms of the arbitration clauses in the purchase order and the financing agreement did not irreconcilably conflict and Kendall was not required to explain the arbitration clauses to the Buyers in Spanish. Thus, because the Buyers had a full and fair opportunity to inquire into the terms of the documents, and they declined to do so, they will not

now be able to escape the binding effect of their unequivocal assent to the arbitration clauses by claiming that Kendall did not explain the terms.

The trial court's remaining justification, that the arbitration agreement was offered on a "take-it-or-leave-it" basis, is on these facts insufficient to prove that the Buyers' execution of the arbitration agreement was procedurally unconscionable. See Concepcion, 563 U.S. at 346-47 (holding that "the times in which consumer contracts were anything other than adhesive are long past"); Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1214-15 (11th Cir, 2011) (rejecting unconscionability challenges based on class waiver, small venue claims, and the adhesive nature of form contracts); Spring Lake NC, 110 So. 3d at 918 (recognizing the role of standardized contracts and that most contracts are no longer individually negotiated and handwritten). Because the Buyers failed to prove any degree of procedural unconscionability, we conclude that the arbitration agreements contained in the purchase order and financing agreement are not unconscionable.

## CONCLUSION

We find that, as a matter of law, each of the trial court's alternative findings for denying Kendall's motion to compel arbitration are flawed. Because the Buyers did not attempt to learn what the documents they were signing said or meant by reading them, requesting that they be read or explained to them, or ask any

31

question to educate themselves as to the terms; there is no evidence that the Buyers were rushed, pressured, or coerced into signing the documents; there is no evidence that Kendall's employees took it upon themselves to explain the documents and then either omitted mentioning the arbitration provisions or misrepresented the meaning of those provisions; and the arbitration provisions in the purchase order and financing agreement did not irreconcilably conflict, the trial court erred by finding that there was no valid agreement to arbitrate. We also reject the trial court's finding of procedural unconscionability. Accordingly, we reverse the trial court's order denying Kendall's motion to compel arbitration and remand for proceedings consistent with this opinion.

Reversed and remanded.