# Third District Court of Appeal

## State of Florida

Opinion filed October 4, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1927
Lower Tribunal No. 22-755
_____

**M.P.,**
Appellant,

vs.

**Guiribitey Cosmetic & Beauty Institute, Inc., etc., et al.,**
Appellees.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Maria de Jesus Santovenia, Judge.

Twig, Trade, & Tribunal, PLLC and Morgan L. Weinstein (Fort Lauderdale), for appellant.

Lalchandani Simon PL, Kubs Lalchandani, and Bibiana Pesant, for appellee Guiribitey Cosmetic & Beauty Institute, Inc., d/b/a CG Cosmetic Surgery.

Before EMAS, LINDSEY, and MILLER, JJ.

MILLER, J.

Appellant, M.P., challenges a final order compelling arbitration and dismissing her lawsuit against appellees, Guiribitey Cosmetic & Beauty Institute, Inc. d/b/a CG Cosmetic Surgery and Decio A. Carvalho, M.D. (the "Medical Providers"). On appeal, the assertion of error is threefold: (1) the arbitration agreement M.P. signed in anticipation of her surgery is unenforceable on the grounds of unconscionability and duress; (2) the claims set forth in the complaint are not arbitrable; and (3) dismissal was improper under the Revised Florida Arbitration Code. See ch. 682, Fla. Stat. (2022). Observing Florida's longstanding public policy encouraging the cost-effective and expeditious resolution of disputes through arbitration, we affirm on all grounds, save the third.

## BACKGROUND

M.P. scheduled outpatient, elective cosmetic surgery with the Medical Providers. Weeks before the surgery, she received and paid an invoice for a nonrefundable deposit. The invoice contained choice of law and venue provisions "subject to any dispute resolution agreements between the parties."

On the eve of the surgery, M.P. received a forty-nine-page personalized surgical packet. Included among the documents were two

2

forms. The first, labeled "Consent to Taking and Publication of Photographs," contained the following language:

> The use of photographs is essential to the planning and evaluation of cosmetic and reconstructive surgery. Your surgery will be photographically documented before, possibly during and after the procedure. . . .
>
>     . . . .
>
> The photographs may be used (anonymously) included and not limited to television, interviews, programs produced for cable TV, on the Internet, social media Facebook, Instagram, Snapchat or other media, for marketing, educational or promotional materials.

In multiple places, the document allowed the patient to decline or qualify the scope of consent. M.P. did not avail herself of this opportunity and instead signed the form.

The second form, entitled "Patient Arbitration Agreement," spanned three pages and consisted of an introduction and five articles. The introduction expressly conditioned the provision of surgical services on the execution of the agreement. The first article provided, in pertinent part: "Patient hereby agrees and understands that, except as specifically set forth in paragraph (b) below, any and all claims arising out of or related to the relationship between Company and Patient will be determined by submission to arbitration as provided by the Florida Arbitration Code, Chapter 682,

Florida Statutes."  The only stated exceptions were for medical negligence and fee collection claims.

The second article contained the heading "All Claims Must Be Arbitrated."  It specified that the agreement applied to "all parties . . . whose claims may arise out of or relate to services provided by [the Medical Providers]."  The third and fourth articles set forth procedures and general provisions, while the fifth read: "Retroactive Effect.  Patient agrees that any controversy, unless expressly excluded in this Agreement, arising out of or relating to any prior contractual or other relationship with Company, or services performed or to have been performed by Company, shall be submitted to binding arbitration."

A capitalized paragraph above the signature line reflected: "[The parties] hereby give up their constitutional right to have any dispute under this Agreement decided in a court of law before a jury, and instead are accepting the use of binding arbitration."  In signing the document, M.P. certified the following: "I have read and understand the above Agreement.  I understand that I have the right to have my questions about arbitration of this Agreement answered and I do not have any unanswered questions.  I execute this Agreement of my own free will and not under any duress."

4

After undergoing surgery, M.P. discovered images of her nude body on Instagram. She filed a six-count complaint against the Medical Providers for commercial appropriation, breach of fiduciary duty, and invasion of privacy. The Medical Providers moved to compel arbitration. M.P. argued that the last-minute presentation of the arbitration agreement, nonrefundable nature of the deposit, and judicial carve-out for fee collection claims rendered the agreement unconscionable and the product of duress. She alternatively asserted her claims fell outside the scope of the arbitration clause. The trial court compelled arbitration and dismissed the case. The instant appeal ensued.

**STANDARD OF REVIEW**

We review an order compelling arbitration de novo. Costa v. Miami Lakes AM, LLC, 359 So. 3d 392, 395 (Fla. 3d DCA 2023). Similarly, we review de novo the dismissal of M.P.'s complaint. Medicability, LLC v. Blue Hill Buffalo Consulting, LLC, 352 So. 3d 467, 469 (Fla. 2d DCA 2022).

**ANALYSIS**

Florida law has historically favored arbitration agreements. See Costa, 359 So. 3d at 395. Consequently, where the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of the agreement should be resolved in favor of arbitration. Idearc Media

5

Corp. v. M.R. Friedman & G.A. Friedman, P.A., 985 So. 2d 1159, 1161 (Fla. 3d DCA 2008). Consistent with these principles and the seminal Florida Supreme Court decision in Seifert v. U.S. Home Corp., 750 So. 2d 633 (Fla. 1999), a court must determine whether a movant has established three prerequisites before compelling arbitration: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Id. at 636; see also § 682.02, Fla. Stat. (2022). The court is authorized to summarily decide a motion to compel arbitration "unless it finds that there is no enforceable agreement to arbitrate." § 682.03(1)(b), Fla. Stat. (2022).

In the instant case, M.P. concedes she executed the arbitration agreement, but she seeks to avoid arbitration on the grounds of unconscionability and duress or, alternatively, inarbitrability. Having carefully surveyed applicable precedent, we are not so persuaded.

"Unconscionability has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors." 21 Richard A. Lord, Williston on Contracts § 57:15 (4th ed. 2023). Despite this nebulosity, Florida case law provides concrete guidance as to the burden assumed by a litigant seeking to avoid arbitration. The litigant must establish both procedural and substantive unconscionability. SHEDDF2-FL3, LLC v.

6

<u>Penthouse S., LLC</u>, 314 So. 3d 403, 409 (Fla. 3d DCA 2020); <u>Murphy v. Courtesy Ford, L.L.C.</u>, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006).

The procedural prong focuses on "the manner in which [the] contract is entered." <u>Hobby Lobby Stores, Inc. v. Cole</u>, 287 So. 3d 1272, 1275 (Fla. 5th DCA 2020). The central analysis concerns "whether, given the totality of the circumstances, the parties had a meaningful choice to refuse the contract terms." <u>Kendall Imps., LLC v. Diaz</u>, 215 So. 3d 95, 109 (Fla. 3d DCA 2017). Of relevance is whether terms were hidden from the signee.

The substantive prong, in turn, relates to the reasonableness of the contractual terms and whether they are "so outrageously unfair as to shock the judicial conscience." <u>FL-Carrollwood Care, LLC v. Gordon</u>, 72 So. 3d 162, 165 (Fla. 2d DCA 2011). In evaluating this prong, courts consider whether the terms conflict with public interest or policy. This occurs where the agreement is "improvident, oppressive, or totally one-sided," or the allocation of payment of arbitration fees stymies access to the tribunal. <u>Streams Sports Club, Ltd. v. Richmond</u>, 457 N.E.2d 1226, 1232 (Ill. 1983).

Here, M.P. contends that, because she was presented with the paperwork on the eve of her surgery and risked the loss of her deposit if she failed to agree to arbitration, the agreement was procedurally unconscionable. While these facts support the conclusion that the contract

7

was presented on a "take it or leave it basis," this court and others have held that the "adhesionary nature of the contract does not necessarily lead to a finding of unconscionability." Yvette Ostolaza, Enforcement of Arbitration Agreements in Consumer Financial Services Contracts, 60 Consumer Fin. L.Q. Rep. 265, 267 (2006); see also Kendall Imps., 215 So. 3d at 109–10. Instead, "arbitration specified in a form contract must be treated just like any other clause of the form." Carbajal v. H & R Block Tax Servs., Inc., 372 F.3d 903, 906 (7th Cir. 2004). And here, the arbitration clause was delineated in the table of contents of the packet. It contained numerous subheadings clarifying its expansive reach, and the font was consistent with that reflected on the accompanying documents. The obligations of the parties were synopsized at the conclusion of the clause in capital letters.

Further, M.P.'s only argument in support of the substantive prong is that the agreement excludes collections from the ambit of arbitration. In construing an arbitration agreement, we apply principles of contract law. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). It is axiomatic that "contract law has never required that the precise terms of the exchange be symmetrical." Christopher R. Drahozal, Nonmutual Agreements to Arbitrate, 27 J. Corp. L. 537, 539 (2002). Indeed, "[m]utuality of remedy in contracts . . . has largely disappeared from the law of American jurisdictions."

<u>LaBonte Precision, Inc. v. LPI Indus. Corp.</u>, 507 So. 2d 1202, 1203 (Fla. 4th DCA 1987). In this vein, many arbitration clauses exclude collections actions and the like from arbitration. This is common because such routine matters are "proceedings to which arbitration may add an inefficient additional step."[1] Drahozal, 27 J. Corp. L. at 553. As against these principles, we conclude these facts, without more, are insufficient to establish unconscionability.

The duress claim similarly fails. Casting aside the fact M.P. certified she signed the agreement of her "own free will and not under any duress," she was alerted to the possibility of alternative dispute resolution before she tendered her deposit. Moreover, the record is devoid of any showing of "improper and coercive conduct" by the Medical Providers, as is required to demonstrate duress. <u>City of Miami v. Kory</u>, 394 So. 2d 494, 497 (Fla. 3d DCA 1981).

We must therefore examine whether the asserted claims are arbitrable. In considering the arbitrability of a dispute, we must first determine the scope of the arbitration clause. See <u>BREA 3-2 LLC v. Hagshama Fla. 8 Sarasota,</u>

---

[1] This agreement, like many others, contains a severability clause. <u>See</u> 8A Larry R. Leiby, <u>Constr. Law Manual</u> § 19:8 (2022-2023 ed.) ("Where an unconscionable provision may be severed from the arbitration clause the agreement to arbitrate may be enforced with the unconscionable provision severed.").

9

LLC, 327 So. 3d 926, 932 (Fla. 3d DCA 2021).  In this context, clauses are classified as "broad" or "narrow."  Seifert, 750 So. 2d at 636–37.  In Jackson v. Shakespeare Found., Inc., 108 So. 3d 587 (Fla. 2013), the Florida Supreme Court explained this distinction:

> An arbitration provision that is considered to be narrow in scope typically requires arbitration for claims or controversies "arising out of" the subject contract.  This type of provision limits arbitration to those claims that have a direct relationship to a contract's terms and provisions.  In contrast, an arbitration provision that is considered to be broad in scope typically requires arbitration for claims or controversies "arising out of *or relating to*" the subject contract.  The addition of the words "relating to" broadens the scope of an arbitration provision to include those claims that are described as having a "significant relationship" to the contract—regardless of whether the claim is founded in tort or contract law.

Id. at 593 (citations omitted).

Nonetheless, "[t]he question whether a tort claim arising between parties who have a contractual relationship requiring that a claim 'arising out of or relating to' an agreement or a breach of an agreement be subjected to arbitration is not without difficulty."  Seifert, 750 So. 2d at 639 (quoting Dusold v. Porta-John Corp., 807 P.2d 526, 529 (Ariz. Ct. App. 1990)).  The answer, of course, is contingent upon whether there is a contractual nexus between the asserted claim and the contract.  See Jackson, 108 So. 3d at 593.  A contractual nexus exists "if the claim presents circumstances in which the

10

resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." Id.

Here, the arbitration clause broadly encompasses any dispute "arising out of or relating to" the parties' relationship, including those claims derived from any "prior contractual relationship." Under our precedent, this language is sufficiently expansive to constitute a "broad" clause. Id. Further, we find there is a "contractual nexus" between the claims alleged in the complaint and the contract. The arbitration agreement and photo consent were presented to M.P. in a single merged packet of documents. The packet was consecutively paginated and, as observed previously, included a table of contents accounting for both documents. The consent deemed the photographs "essential" to the success of the surgery, and, in signing the form, M.P. authorized the Medical Providers to disseminate the photographs on Instagram without identifying the patient. Under these facts, resolution of whether the Medical Providers engaged in tortious acts will necessarily require "either reference to, or construction of, a portion of the [integrated] contract." Id.

Accordingly, and in the absence of any assertion of waiver, we affirm the order compelling arbitration. We are constrained to reverse the disposition order, however, as under the Revised Florida Arbitration Code, a

11

stay, rather than dismissal, is appropriate. § 682.03(7), Fla. Stat. ("If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration.").

Affirmed in part, reversed in part, and remanded.

EMAS, J., concurs.

LINDSEY, J., concurs in result only.